**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-620 (BAH)** |
| **v.** | : | |
| | : | |
| **ANTHONY VUKSANAJ,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter.  For the reasons set forth herein, the government requests that the Court sentence Anthony Vuksanaj ("Vuksanaj") to a split sentence of three months in prison followed by 36 months of probation, 60 hours of community service, and $500 restitution.

## I.    Introduction

The defendant, Anthony Vuksanaj, a resident of New York with eight prior criminal convictions, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' of property damage.

Vuksanaj pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building.  As explained here, a sentence of three months in prison is appropriate in this case because: (1) Vuksanaj entered the Capitol, walking past signs of violence including broken glass and rioters climbing into the building through broken windows;

1

(2) he spent 40 minutes walking throughout the Capitol, penetrating multiple parts of the building; (3) despite being present during two physical clashes with police, he did not exit the building, but instead continued to trespass through the Capitol; and (4) Vuksanaj has a criminal history with eight prior convictions including one felony offense, and was found with four firearms during his arrest in this case on September 30, 2021 despite being legally prohibited from possessing firearms.

The Court must also consider that Vuksanaj's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, Vuksanaj's participation in a riot that succeeded in halting the Congressional certification, and the potential for future violence renders a jail sentence both necessary and appropriate in this case.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

*Anthony Vuksanaj's Role in the January 6, 2021 Attack on the Capitol*

Vuksanaj drove from his home in New York to Washington, D.C. the morning of January 6, 2021. He attended the "Stop the Steal" rally and stayed until the conclusion of the last speech. He then walked with a crowd toward the United States Capitol building. He was aware that Congress was scheduled to certify the results of the presidential election that day.

At approximately 2:13 p.m., the Senate Wing Door of the U.S. Capitol building was breached when rioters broke the glass windows on either side of the door, climbed inside the building, and then kicked the door open from the inside:



A video from the outside of the door captured a rioter kicking the Senate Wing Door from the outside with his foot and shows that the window glass of the Senate Wing Door was smashed during the breach.[1]

---

[1] *Available at* https://projects.propublica.org/parler-capitol-videos/?id=Z53KwQnRVQtM, timestamp 0:10, last visited March 16, 2022.



A stream of people proceeded to enter the building through the door and the broken windows:



Vuksanaj entered the Capitol through the same door approximately seven minutes later, while taking video with his phone (Exhibit 1 [2]):



*See also* Exhibit 8.  Once inside, he walked past broken glass and people climbing into the building through the windows (Exhibit 1):

---

[2] Numbered exhibits 1 through 7 referenced herein were provided in conjunction with the Notice of Filing of Items Incompatible with CM/ECF Filing.  Doc. 23.  Numbered exhibits 8 through 11 were provided in conjunction with the Second Notice of Filing of Items Incompatible with CM/ECF Filing.  Doc. 36.



At his plea hearing, Vuksanaj claimed that he did not see people climbing through the windows, but admitted that he saw the broken glass on the door.  Doc. 29 (Plea Transcript) at 15.

Vuksanaj then walked through multiple locations throughout the first and second floors of the Capitol Building, including an area referred to as the "OAP Corridor," the Crypt, Statuary Hall and the Statuary Hall Connector hallway area, an area known as the "Ohio Clock Corridor," and the Rotunda.  Photos from some of those locations are below:













While in the Crypt, Vuksanaj witnessed members of the crowd violently confronting police officers who denied the crowd's chants to "Let us through, let us through."  Vuksanaj captured the confrontation on video (Exhibit 8):



Vuksanaj nonetheless remained in the building, walking with crowds chanting, "Who's house? Our house," and "Nancy, Nancy," "You serve us," and "Fuck McConnell." *See* Exhibits 2-4. He climbed at least one flight of stairs to the second floor where he spent time in multiple rooms and corridors. A rioter standing in the vicinity of Vuksanaj commented, "there is so much gas, it's burning my nostrils." Exhibit 2. At his plea hearing, Vuksanaj admitted that he noticed a smell, but claimed that he did not know what it was. Doc. 29 at 17.





Vuksanaj continued to take video on his phone from inside the U.S. Capitol Building as he walked about. At one point, he videotaped a member of the crowd kicking open a door (Exhibit 10):






At approximately 2:48 p.m., officers attempted to push back and control a crowd in the area of the Ohio Clock Corridor. Vuksanaj was near the front of that crowd and was forced back by the officers. *See* Exhibit 5. He later acknowledged that he was able to see that law enforcement officers were trying to keep this mob under control and from going deeper into the Capitol but said that he just happened to get caught up with that crowd. Doc. 29 at 17-18.







Vuksanaj's own video shows that he was standing directly in front of the officers as members of the crowd shouted to be let through.  *See* Exhibit 11.

Despite being physically pushed back by police officers inside the Capitol, Vuksanaj remained in the building for about 12 more minutes. He returned to Statuary Hall and the Rotunda. *See* Exhibit 6.





At approximately 3:00 p.m., forty minutes after he entered the Capitol Building, Vuksanaj exited the building through the East Rotunda Doors.

14

Vuksanaj admitted during his guilty plea hearing that he knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building and that he paraded, demonstrated, or picketed.

### Anthony Vuksanaj's Interview

As a condition of his plea agreement Vuksanaj agreed to an interview with the FBI. During that interview, Vuksanaj said that he saw police officers outside the Capitol building but that they did not try to stop anyone from entering. He claimed that he did not see any confrontations with law enforcement outside and that he would not have gone inside if he had. He stated he was sorry about his participation in the events of that day and that he regrets being in Washington D.C. on January 6.

### The Charges and Plea Agreement

On September 28, 2021, Anthony Vuksanaj was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). He was arrested two days later. On October 6, 2021, Vuksanaj was charged by Information with the same four offenses. Doc. 3. On January 20, 2022, he pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating or Picketing in the Capitol Building. By plea agreement, Vuksanaj agreed to pay $500 in restitution to the Department of the Treasury.[3]

---

[3] At the Change of Plea hearing, the Court asked the government to provide updated numbers regarding the costs incurred as a result of the damage caused by the Capitol Siege. According to the Architect of the Capitol, the Capitol Police, the House Chief Administrative Office, the Secretary of the Senate and the Senate Sargent at Arms, as of March 2022, the costs incurred total $2,734,783.14.

### III.    Statutory Penalties

Vuksanaj now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment, five years of probation and a fine of up to $5,000. He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of incarceration.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 was a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on his or her individual conduct, each person who entered the Capitol on January 6 without authorization did so under the most extreme

of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, the Court, in determining a fair and just sentence, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had Vuksanaj personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of Vuksanaj is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish him from most other misdemeanor defendants.

Here, Vuksanaj entered the Capitol Building through the Senate Wing Door seven minutes after it had been forcibly breached. He saw the broken glass on the door and entered the building alongside rioters who were climbing through windows. Vuksanaj spent forty minutes roaming through the Capitol Building, walking among chanting crowds. In the Crypt, he had a close-up

view of a physical clash between rioters and law enforcement, but this did not deter him.   He continued farther into the building, and in the Ohio Clock Corridor, Vuksanaj walked all the way up to a line of law enforcement officers who physically pushed the crowd back in an effort to prevent them from penetrating other parts of the building, and to try to force them out of the building.  Despite being directly pushed back by law enforcement during this scrum, Vuksanaj did not exit the building.   Instead, he traveled inside for more than ten minutes before deciding to leave.

This conduct distinguishes Vuksanaj from other defendants who spent mere minutes inside the building and then promptly exited without traveling beyond an initial entry point.  It also distinguishes Vuksanaj from defendants who never encountered law enforcement, let alone were forced back by those officers.  This Court should impose a longer term of incarceration on Vuksanaj than the sentences imposed on those less culpable defendants.

### B.  The History and Characteristics of the Defendant

Vuksanaj's long criminal history also sets him apart from the majority of other January 6 defendants.  As set forth in the PSR, Vuksanaj has eight prior convictions.  Among those is a 1992 felony conviction for the criminal possession of a loaded firearm.  PSR ¶ 24.  As a result of that conviction, Vuksanaj could not lawfully possess a firearm.   *See* 18 U.S.C. § 922(g)(1). Nevertheless, four firearms were seized from his residence when a search warrant was conducted during the investigation of this case: three handguns and one rifle, in addition to three magazines and one high-capacity magazine.  Agents found three of the firearms in the master bedroom used by Vuksanaj, and one in the closet of that bedroom.  In fact, agents apprehended Vuksanaj in that bedroom while still in bed during the search of the premises and found a loaded automatic rifle

with a high-capacity magazine leaning against the bedframe, a handgun nearby, and another handgun in a box between a pillow on the bed and the headboard.

While none of Vuksanaj's other convictions are for felony offenses, it is troubling that his criminal conduct has not abated as he has aged. Nor are his misdemeanor convictions minor traffic infractions. They include two petit larceny convictions and two DUI convictions. And in April 2021, he was convicted of two separate offenses that occurred in 2019. One conviction was on four counts, including disorderly conduct/violent behavior and obstruction governmental administration in the second degree, PSR ¶ 30, and the other was a criminal mischief and harassment conviction. *Id*. ¶ 31.

Finally, on June 6, 2021, Vuksanaj was arrested and charged with Robbery-First Forcible Theft Armed with a Deadly Weapon in Westchester County, New York. PSR ¶ 34. According to the local prosecutor's office, the case was dismissed because the victim declined to proceed.

Vuksanaj's criminal history tells a story of a man who, at a minimum, is not a stranger to breaking rules and getting into trouble, even after sustaining serious injuries from an automobile accident in 2011 that has prevented him from holding gainful employment. PSR ¶¶ 43, 49-50. His actions on January 6 were not an aberration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the

democratic process."[4] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

---

[4] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry. Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society. Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters— especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

In prior convictions, Vuksanaj has received brief custodial and probationary sentences and he has been fined as much as $1000. PSR ¶¶ 24-31. None of these consequences have deterred Vuksanaj from continuing to break the law. A period of incarceration is necessary to deter Vuksanaj from future crimes and send the message that his continued pattern of disregarding the law will not be tolerated. And a period of probation will assist in ensuring that Vuksanaj remains compliant and law-abiding into the future.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[5] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not become the default.[6]  *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth); *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic

---

[5] Attached as an Appendix to this sentencing memorandum is a chart providing additional information about the sentences imposed on other Capitol breach defendants.  The Appendix also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[6]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

The government and the sentencing courts have drawn meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

Vuksanaj has pleaded guilty to Count Four of the Information, charging him with parading, demonstrating or picketing in Capitol building, a violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside and whether he witnessed any violence—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no

unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may also consider the sentence imposed in the following cases for reference.

*United States v. Stenz* shares a number of common characteristics with the present case. Stenz, like Vuksanaj, entered the Capitol building through the Senate Wing Door. He spent only 8 minutes in the building, but did enter Senator Merkley's office while inside. Both Stenz and Vuksanaj took photos or videos documenting their time inside the Capitol, although Stenz also texted his photographs to a group of acquaintances. Stenz, like Vuksanaj, had a criminal history, with five prior convictions dating back to age 19 as well as pending charges for falsifying records related to the purchase of a firearm. However, Stenz did not have any felony convictions, nor did he have any criminal misconduct after January 6. Notably, 12 days after January 6 Stenz, through

his attorney, voluntarily contacted the United States Attorney's Office in D.C. regarding his January 6 crimes.  He then submitted to a voluntary interview with the FBI during which he expressed remorse for his actions.  The government requested a sentence of 14 days' incarceration followed by 36 months of probation, 60 hours of community service and a payment of $500 in restitution.  This court sentenced Stenz to 14 days' incarceration followed by 36 months of probation including two months of home detention, a $2500 fine, and a payment of $500 in restitution.  *See United States v. Brian E. Stenz*, 1:21-cr-00456 (BAH).  While Vuksanaj did not enter a space like Senator Merkley's office, he remained in the Capitol five times longer than Stenz and was present during two clashes with the police.  He also has a more serious criminal history and lacks the mitigating element of coming forward to the government like Stenz did. Accordingly, the government seeks a heavier sentence for Vuksanaj.

In *United States v. Camper*, the defendant was a Marine veteran who spent approximately 10 to 15 minutes inside the Capitol.  Camper made some statements of intent including, "We're going to take this damned placed."  He likely destroyed a Go-Pro camera that he wore when he entered the Capitol.  Camper had a minor criminal history with one prior conviction, and he turned himself in and agreed to be interviewed by the FBI.  The government requested a sentence of 60 days' incarceration and a payment of $500 in restitution.  The court sentenced defendant Camper to the requested 60 days of incarceration and ordered $500 in restitution along with 60 hours of community service.  *See United States v. Boyd Camper*, 1:21-cr-00325 (CKK) (11/12/2021 Tr.). While the government has no similar evidence of intent or destruction of evidence, Vuksanaj spent more than twice the time inside the building, was part of the crowd that officers physically pushed back to prevent them from going further into the building, did not turn himself in, and has a more substantial history of violating the law.  Thus a longer sentence is warranted here.

Finally, in *United States v. Pham*, the defendant, an 18-year Houston Police Officer with no criminal history, spent approximately 20 minutes in the Capitol building which included walking through House Leader Kevin McCarthy's office suite.   He, like Vuksanaj, took photographs inside and outside of the Capitol, and he also posted one to social media that he promptly took down.   Unlike Vuksanaj, he voluntarily spoke to the FBI before his arrest.   While he initially denied entering the Capitol, he quickly admitted that he did enter the building.   He insisted that he did not see signs of violence or warning signs of danger when he entered, a claim that the court found suspect.   The government requested 60 days' incarceration and $500 in restitution.   The court sentenced Pham to 45 days' incarceration, a $1000 fine, and $500 in restitution.   *See United States v. Pham*, Case No. 21-CR-00109 (TJK) (10/10/21 Sentencing Tr.). Again, Pham spent half the time that Vuksanaj spent in the Capitol and had positive and compelling history and characteristics not present here.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.      **The Court's Lawful Authority to Impose a Split Sentence**

A sentencing court may impose a "split sentence"—"a period of incarceration followed by period of probation," *Foster v. Wainwright*, 820 F. Supp. 2d 36, 37 n.2 (D.D.C. 2011) (citation omitted)—for a defendant convicted of a federal petty offense.  *See* 18 U.S.C. § 3561(a)(3); *see United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that "a split sentence is permissible under law and warranted by the circumstances of this case); *United States v. Smith*, 21-cr-290 (RBW), ECF 43 (D.D.C. Mar. 15, 2022) (imposing a split sentence).

### A.   A sentence imposed for a petty offense may include both incarceration and probation.

#### 1.   *Relevant Background*

In 1984, Congress enacted the Sentencing Reform Act, which in substantial part remains the sentencing regime that exists today.  *See* Pub. L. No. 98–473, §§ 211-212, 98 Stat 1837 (1984), *codified at* 18 U.S.C. § 3551 *et seq.*; *see Mistretta v. United States*, 488 U.S. 361, 365-66 (1989) (noting that the Sentencing Reform Act of 1984 wrought "sweeping changes" to federal criminal sentencing).  That legislation falls in Chapter 227 of Title 18, which covers "Sentences."  Chapter 227, in turn, consists of subchapter A ("General Provisions"), subchapter B ("Probation"), subchapter C ("Fines"), and subchapter D ("Imprisonment).  Two provisions—one from subchapter A and one from subchapter B—are relevant to the question of whether a sentencing court may impose a term of continuous incarceration that exceeds two weeks[7] followed by a term of probation.

---

[7] A period of incarceration that does not exceed two weeks followed by a term of probation is also permissible under 18 U.S.C. § 3563(b)(10).  *See* Part II *infra*.

First, in subchapter A, 18 U.S.C. § 3551 sets out "[a]uthorized sentences." Section 3551(a) makes clear that a "defendant who has been found guilty of" any federal offense "shall be sentenced in accordance with the provisions of" Chapter 227 "[e]xcept as otherwise specifically provided." 18 U.S.C. § 3551(a). Section 3551(b) provides that a federal defendant shall be sentenced to "(1) a term of probation as authorized by subchapter B; (2) a fine as authorized by subchapter C; or (3) a term of imprisonment as authorized by subchapter D." 18 U.S.C. § 3551(b).[8] As a general matter, therefore, "a judge must sentence a federal offender to either a fine, a term of probation, or a term of imprisonment." *United States v. Kopp*, 922 F.3d 337, 340 (7th Cir. 2019).

Second, 18 U.S.C. § 3561, the first provision in subchapter B, addresses a "[s]entence of probation." As initially enacted, Section 3561 provided that a federal defendant may be sentenced to a term of probation "unless . . . (1) the offense is a Class A or Class B felony and the defendant is an individual; (2) the offense is an offense for which probation has been expressly precluded; or (3) the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense." Pub. L. No. 98-473, at § 212; *see United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992) (noting that the Sentencing Reform Act did not permit "a period of 'straight' imprisonment . . . at the same time as a sentence of probation").

Congress, however, subsequently amended Section 3561(a)(3). In 1991, Congress considered adding the following sentence to the end of Section 3561(a)(3): "However, this paragraph does not preclude the imposition of a sentence to a term of probation for a petty offense if the defendant has been sentenced to a term of imprisonment at the same time for another such offense." H.R. Rep. 102-405, at 167 (1991). Instead, three years later Congress revised Section

---

[8] Section 3551(b) further provides that a sentencing judge may impose a fine "in addition to any other sentence." 18 U.S.C. § 3551(b).

3561(a)(3) by appending the phrase "that is not a petty offense" to the end of the then-existing

language. *See* H.R. Rep. No. 103-711, at 887 (1994) (Conference Report). In its current form,

therefore, Section 3561(a)(3) provides that a defendant "may be sentenced to a term of probation

unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a

different offense that is not a petty offense." 18 U.S.C. § 3561(a)(3).

### 2. *Analysis*

Before Congress passed the Sentencing Reform Act of 1984, sentencing courts could

impose a split sentence on a federal defendant in certain cases. *See United States v. Cohen*, 617

F.2d 56, 59 (4th Cir. 1980) (noting that a sentencing statute enacted in 1958 had as its "primary

purpose . . . to enable a judge to impose a short sentence, not exceeding sixth months, followed by

probation on a one count indictment"); *see also United States v. Entrekin*, 675 F.2d 759, 760-61

(5th Cir. 1982) (affirming a split sentence of six months' incarceration followed by three years of

probation). In passing the Sentencing Reform Act, Congress sought generally to abolish the

practice of splitting a sentence between imprisonment and probation because "the same result"

could be accomplished through a "more direct and logically consistent route," namely the use of

supervised release as set out in 18 U.S.C. §§ 3581 and 3583. S. Rep. No. 225, 1983 WL 25404,

at *89; *accord* United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 5B1.1,

Background. But Congress's 1994 amendment to Section 3561(a)(3) reinstated a sentencing

court's authority to impose a split sentence for a petty offense.

Under 18 U.S.C. § 3561, a defendant "may be sentenced to a term of probation unless . . .

the defendant is sentenced at the same time to a term of imprisonment for the same or a different

offense that is not a petty offense." 18 U.S.C. § 3561(a)(3). Thus, for any federal offense *other*

*than* a petty offense, Section 3561(a)(3) prohibits "imposition of both probation and straight

imprisonment," consistent with the general rule in Section 3551(b).  *United States v. Forbes*, 172 F.3d 675, 676 (9th Cir. 1999); *see United States v. Martin*, 363 F.3d 25, 31 (1st Cir. 2004); *United States v. Harris*, 611 F. App'x 480, 481 (9th Cir. 2015); *Anderson*, 787 F. Supp. at 539.

But the statutory text of 18 U.S.C. § 3561(a)(3) goes further by permitting a court to sentence a defendant to a term of probation "unless" that defendant "is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense."  18 U.S.C. § 3561(a)(3).  Section 3561 "begins with a grant of authority"—permitting a court to impose probation—followed by a limitation in the words following "unless."  *Little*, 2022 WL 768685, at *4.  But that limitation "does not extend" to a defendant sentenced to a petty offense.  *See id.* ("[W]hile a defendant's sentence of a term of imprisonment *may* affect a court's ability to impose probation, the petty-offense clause limits this exception.").

It follows that when a defendant *is* sentenced for a petty offense, that defendant may be sentenced to a period of continuous incarceration and a term of probation.  *See United States v. Posley*, 351 F. App'x 807, 809 (4th Cir. 2009) (per curiam).  In *Posley*, the defendant, convicted of a petty offense, was sentenced to two years of probation with the first six months in prison.  *Id.* at 808.   In affirming that sentence, the Fourth Circuit concluded that Section 3561(a)(3) "[u]nquestionably" provided statutory authority to sentence the petty-offense defendant to "a term of six months of continuous imprisonment plus probation."  *Id.* at 809; *see* Cyclopedia of Federal Procedure, § 50:203, *Capacity of court to impose probationary sentence on defendant in conjunction with other sentence that imposes term of imprisonment* (3d ed. 2021) ("[W]here the defendant is being sentenced for a petty offense, a trial court may properly sentence such individual to a term of continuous imprisonment for a period of time, as well as a sentence of probation.") (citing *Posley*); *see also* Wright and Miller, *Federal Practice and Procedure*, § 547, at n.13 (4th

ed. 2021) ("A defendant may be sentenced to probation unless he . . . is sentenced at the same time to imprisonment for an offense *that is not petty*.") (emphasis added).

Nor does the phrase "that is not a petty offense" in Section 3561(a)(3) modify only "different offense." *See Little*, 2022 WL 768685, at *5-*6 (concluding that "same" in Section 3561(a)(3) functions as an adjective that modifies "offense"). Section 3561(a)(3) does not state "the same *offense* or a different offense that is not a petty offense," which would imply that the final modifier—*i.e.*, "that is not a petty offense"—applies only to "different offense." The phrase "that is not a petty offense" is a postpositive modifier best read to apply to the entire, integrated phrase "the same or a different offense." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 148 (2012). Had Congress sought to apply the phrase "not a petty offense" solely to "different offense," the "typical way in which syntax would suggest no carryover modification" would be some language that "cut[s] off the modifying phrase so its backward reach is limited." *Id.* at 148-49. And while the indefinite article "a" might play that role in other contexts (*e.g.*, "either a pastry or cake with icing" vs. "either a pastry or a cake with icing"), the indefinite article in Section 3561(a)(3) merely reflects the fact that the definite article before "same" could not naturally apply to the undefined "different offense." *See Little*, 2022 WL 768685, at *6 (identifying other statutes and "legal contexts" with the identical phrase that carry the same interpretation).

Permitting a combined sentence of continuous incarceration and probation for petty offenses is sensible because sentencing courts cannot impose supervised release on petty-offense defendants. *See* 18 U.S.C. § 3583(b)(3); *United States v. Jourdain*, 26 F.3d 127, 1994 WL 209914, at *1 (8th Cir. 1994) (unpublished) (plain error to impose a term of supervised release for a petty offense). When Congress in 1994 amended the language in Section 3561(a), it again provided

sentencing courts with "latitude," *see* S. Rep. 98-225, 1983 WL 25404, at *89, to ensure some degree of supervision—through probation—following incarceration.

Section 3551(b)'s general rule that a sentencing court may impose either imprisonment or probation (but not both) does not preclude a sentencing court from imposing a split sentence under Section 3561(a)(3) for a petty offense for two related reasons.

First, the more specific permission for split sentences in petty offense cases in Section 3561(a)(3) prevails over the general prohibition on split sentences in Section 3551(b). *See Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one."). As noted above, when Congress enacted the general prohibition on split sentences in Section 3551(b), it had not yet enacted the more specific carveout for split sentences in petty offense cases in Section 3561(a)(3). That carveout does not "void" the general prohibition on split sentences in Section 3551(b); rather, Section 3551(b)'s general prohibition's "application to cases covered by the specific provision [in Section 3651(a)(3)] is suspended" as to petty offense cases. Scalia & Garner, *supra*, at 184. In other words, Section 3551(b)'s prohibition against split sentences "govern[s] all other cases" apart from a case involving a petty offense. *Id.* This interpretation, moreover, "ensures that *all* of Congress's goals set forth in the text are implemented." *Little*, 2022 WL 768685, at *8.

Second, to the extent Section 3551(b)'s general prohibition against split sentences conflicts with Section 3561(a)(3)'s permission for split sentences in petty offense cases, the latter, later-enacted provision controls. *See Posadas v. Nat'l Bank of N.Y.*, 296 U.S. 497, 503 (1936) ("Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one."); Scalia & Garner, *supra*, at 327-329. Where a conflict exists "between a general provision and a specific one, whichever was enacted later might

32

be thought to prevail." *Id.* at 185. "The "specific provision"—here Section 3561(a)(3)—"does not negate the general one entirely, but only in its application to the situation that the specific provision covers." *Id.* Section 3551(b)'s general prohibition does not operate against the more specific, later-enacted carveout for split sentences in Section 3561(a)(3).

An interpretation of Sections 3551(b) and 3561(a) that a sentencing court "must choose between probation and imprisonment when imposing a sentence for a petty offense," *United States v. Spencer*, No. 21-cr-147 (CKK), Doc. 70, at 5 (Jan. 19, 2022), fails to accord the phrase "that is not a petty offense" in Section 3561(a)(3) any meaning. When Congress in 1994 amended Section 3561(a)(3) to include that phrase, it specifically permitted a sentencing court in a petty offense case to deviate from the otherwise applicable general prohibition on combining continuous incarceration and probation in a single sentence. Ignoring that amended language would improperly fail to "give effect to every clause and word" of Section 3561(a)(3). *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013).

Congress's unenacted language from 1991 does not suggest that a split sentence is available only where a defendant is sentenced at the same time for two different petty offenses or for two offenses, at least one of which is a petty offense. For one thing, the Supreme Court has regularly rejected arguments based on unenacted legislation given the difficulty of determining whether a prior bill prompted objections because it went too far or not far enough. *See Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989) ("We do not attach decisive significance to the unexplained disappearance of one word from an unenacted bill because 'mute intermediate legislative maneuvers' are not reliable indicators of congressional intent.") (citation omitted). Moreover, under that view, every offense other than a petty offense could include some period of incarceration and some period of supervision (whether that supervision is supervised release or

probation).  Yet so long as a defendant was convicted of two petty offenses, that defendant could be sentenced to incarceration and supervision (in the form of probation).  No sensible penal policy supports that interpretation.

It follows that a sentencing court may impose a combined sentence of incarceration and probation where, as here, the defendant is convicted of a petty offense.  Vuksanaj pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building, which is a "petty offense" that carries a maximum penalty that does not exceed six months in prison and a $5,000 fine.  *See* 18 U.S.C. § 19; *see United States v. Soderna*, 82 F.3d 1370, 1381 n.2 (7th Cir. 1996) (Kanne, J., concurring) (citations omitted) (noting that a petty offender may face a sentence of up to five years in probation).

**B.   A sentence of probation may include incarceration as a condition of probation, though logistical and practical reasons may militate against such a sentence during an ongoing pandemic.**

### 1.   Relevant background

In 18 U.S.C. § 3563, Congress set out "[c]onditions of probation."  18 U.S.C. § 3563. Among the discretionary conditions of probation a sentencing court may impose is a requirement that a defendant

> remain in the custody of the Bureau of Prisons during nights, weekends or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release.

18 U.S.C. § 3563(b)(10).  Congress enacted this provision to give sentencing courts "flexibility" to impose incarceration as a condition of probation in one of two ways.  S. Rep. No. 225, 1983 WL 25404, at *98.  First, a court can direct that a defendant be confined in "split intervals" over

weekends or at night.  *Id.*  Second, a sentencing court can impose "a brief period of confinement"

such as "for a week or two."  *Id.*[9]

### 2. Analysis

A sentencing court may impose one or more intervals of imprisonment up to a year (or the

statutory maximum) as a condition of probation, so long as the imprisonment occurs during

"nights, weekends or other intervals of time."  18 U.S.C. § 3563(b)(10).  Although the statute does

not define an "interval of time," limited case law suggests that it should amount to a "brief period"

of no more than a "week or two" at a time.  *United States v. Mize*, No. 97-40059, 1998 WL 160862,

at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history described above

and reversing magistrate's sentence that included 30-day period of confinement as a condition of

probation); *accord United States v. Baca*, No. 11-1, 2011 WL 1045104, at *2 (C.D. Cal. Mar. 18,

2011) (concluding that two 45-day periods of continuous incarceration as a condition of probation

was inconsistent with Section 3563(b)(10)); *see also Anderson*, 787 F. Supp. at 538 (continuous

60-day incarceration not appropriate as a condition of probation); *Forbes*, 172 F.3d at 676 ("[S]ix

months is not the intermittent incarceration that this statute permits.").  Accordingly, a sentence of

up to two weeks' imprisonment served in one continuous term followed by a period of probation

is permissible under Section 3563(b)(10).[10]

---

[9] Section 3563(b)(10)'s legislative history notes that imprisonment as a term of probation was "not intended to carry forward the split sentence provided in Section 3561, by which the judge imposes a sentence of a few months in prison followed by probation."  S. Rep. No. 225, 1983 WL 25404, at *98.

[10] Section 3563(b)(10)'s use of the plural to refer to "nights, weekends, or intervals of time" does not imply that a defendant must serve multiple stints in prison.  Just as "words importing the singular include and apply to several persons, parties, or things," "words importing the plural include the singular."  1 U.S.C. § 1; *see* Scalia & Garner, *supra*, at 129-31.

A sentencing court may also impose "intermittent" confinement as a condition of probation to be served in multiple intervals during a defendant's first year on probation. 18 U.S.C. § 3563(b)(10); *see Anderson*, 787 F. Supp. at 539. Notwithstanding a sentencing court's legal authority to impose intermittent confinement in this manner, the government has refrained from requesting such a sentence in Capitol breach cases given the potential practical and logistical concerns involved when an individual repeatedly enters and leaves a detention facility during an ongoing global pandemic. Those concerns would diminish if conditions improve or if a given facility is able to accommodate multiple entries and exits without unnecessary risk of exposure. In any event, the government does not advocate a sentence that includes imprisonment as a term of probation in Vuksanaj's case given the requested three-month imprisonment sentence.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained above, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Anthony Vuksanaj to a split sentence of three months in prison followed by 36 months of probation, 60 hours of community service, and $500 restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior and history, while recognizing his acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:      */s/ Alison B. Prout*
ALISON B. PROUT
GA Bar No. 141666
Assistant United States Attorney